# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL ANGEL ROMO-JIMENEZ,<br><br>Petitioner,<br><br>v.<br><br>ERIC H. HOLDER, JR.,<br><br>Respondent. | Case No. 1:13-cv-2081-AWI-SAB<br><br>FINDINGS AND RECOMMENDATIONS<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

## I.

## PROCEDURAL HISTORY

Following a Board of Immigration Appeals ("BIA") decision to deny derivative citizenship through his mother, Petitioner filed a petition for review of the BIA decision with the United States Court of Appeals for the Ninth Circuit on November 30, 2011. Romo-Jimenez v. Eric H. Holder Jr., No. 11-73647 (9th Cir.)  On August 27, 2013, the Ninth Circuit filed a memorandum and order transferring this action to the United States District Court for the Northern District of California for an evidentiary hearing to determine Petitioner's legal custody during the time period at issue. Id. at ECF No. 31.

On September 19, 2013, this action was transferred to the Northern District and a scheduling order issued. (ECF Nos. 1, 2.) On October 28, 2013, Petitioner consented to the jurisdiction of a magistrate judge. (ECF No. 7.) On October 29, 2013, Respondent declined to

1  consent to the jurisdiction of the magistrate judge. (ECF No. 8.) On October 30, 2013, the case
2  was assigned to a district court judge and a scheduling order issued. (ECF Nos. 10, 11.) On
3  December 14, 2013, pursuant to the stipulation of the parties, the action was transferred to the
4  Eastern District of California. (ECF Nos. 13, 14.) On December 23, 2013, the case was received
5  by the Eastern District. (ECF Nos. 15.) On January 9, 2014, the action was referred to the
6  undersigned to conduct the evidentiary hearing. (ECF No. 22.)

7  An evidentiary hearing was held on May 1, 2014. (ECF No. 1.) Counsel John Balazs
8  appeared for Petitioner and Counsel Nancy Kwang Canter and Katharine Elizabeth Clark
9  appeared for Respondent. (Id.) During the hearing, the parties stipulated to the admission of
10 joint exhibits 1 through 31. Further, the parties agreed that there were no significant factual
11 details in dispute. Respondent conceded for the purpose of this matter that Petitioner's father did
12 not have joint legal custody of Petitioner as he was incarcerated, deported, and had no contact
13 with Petitioner during the relevant time period.

14 The parties stipulated to proceed on the evidence before the Court and a briefing schedule
15 was set with Petitioner's brief due on May 9, 2014. On May 14, 2014, Petitioner filed his
16 supplemental brief. Respondent filed a response on May 23, 2014. Petitioner filed a reply on
17 May 27, 2014. Having considered the pleadings, the evidence admitted at the May 1, 2014
18 evidentiary hearing, and the Court's record, the Court issues the following findings and
19 recommendations.

## II.

## LEGAL STANDARD

22 Citizenship for an individual not born in the United States may only be acquired as
23 provided by Acts of Congress. Minasyan v. Gonzales, 401 F.3d 1069, 1075 (9th Cir. 2005).
24 Derivative citizenship is determined by the law in effect at the time that the critical events giving
25 rise to eligibility occurred. Minasyan, 401 F.3d at 1075. Thus, this action is governed by the
26 Immigration and Nationality Act (INA) § 321(a), 8 U.S.C. § 1432(a), which was repealed in

2000.[1]

Section 1432 provided that "[a] child born outside of the United States of alien parents . . . . becomes a citizen of the United States upon . . . [t]he naturalization of the parent having legal custody of the child when there has been a legal separation of the parents"; the "naturalization takes place while such child is under the age of eighteen years;" and the child resides "in the United States pursuant to a lawful admission for permanent residence. . . ." 8 U.S.C. § 1432(a)(3) (repealed by Pub.L. 106–395, Title I, § 103(a), Oct. 30, 2000, 114 Stat. 1632.). In order to obtain derivative citizenship in this instance, the parent with legal custody of Petitioner must have been naturalized. Barthelemy v. Ashcroft, 329 F.3d 1062, 1067 (9th Cir. 2003); United States v. Casasola, 670 F.3d 1023, 1025 (9th Cir. 2012). Evidence of foreign birth gives rise to a rebuttable presumption of alienage, and the burden is on the alien to prove citizenship by a preponderance of the evidence. Scales v. I.N.S., 232 F.3d 1159, 1163 (9th Cir. 2000; Sanchez-Martinez, 714 F.2d 72, 74 n.1 (9th Cir. 1983).

Under section 1432(a), the phrase "legal custody" means sole legal custody. Casasola, 670 F.3d at 1030-31 (collecting cases). Legal custody is a matter of federal law. Nehme v. I.N.S., 252 F.3d 415, 422 (5th Cir. 2001). "[U]nder agency policy, '[i]n the absence of a judicial determination or judicial statutory grant of custody where the parents are legally separated, the parent having actual uncontested custody is to be regarded as having 'legal custody' of the person concerned.'" Minasyan, 401 F.3d at 1076 n.12.

### III.

### ANALYSIS

This action was remanded by the Ninth Circuit to determine who had legal custody of Petitioner while he was incarcerated with the California Youth Authority. (Mem. and Order 3,

---

[1] The Court notes that Plaintiff would not receive derivative citizenship under the broadened qualifications of the Child Citizenship Act ("CCA") which was enacted February 27, 2001. The CCA provides that a child under the age of eighteen can obtain derivative citizenship when one of his parents is a citizen of the United States by birth or naturalization and the child is residing in the United States in the legal and physical custody of the citizen parent. Casasola, 670 F.3d 1023, 1027 (9th Cir. 2012). Since Petitioner was not in the physical custody of his mother during the relevant time period, he would not be eligible for derivative citizenship under the CCA. See Hughes v. Ashcroft, 255 F.3d 752, 760 (9th Cir. 2001) (CCA grants automatic citizenship only to those children who were under the age of 18, and met the other criteria, on February 27, 2001).

ECF No. 1.)  The critical facts in this matter are not in dispute.

**A.     Findings of Fact**

The Court makes the following findings of fact:

Petitioner was born in Mexico on April 27, 1979.  (Decl. of Maria Jimenez 1, Exhibit J-22.)  On August 15, 1995, the County of Stanislaus Juvenile Court found true a petition that Petitioner violated section 10851 of the California Vehicle Code, Auto Theft.  (Minute Order 2, Exhibit J-05.)  On August 29, 1995, the Juvenile Court removed Petitioner from the custody and control of his parents, placed him under the supervision of his probation officer, and detained him in juvenile hall pending placement in the California Youth Authority.  (Minute Order 1, Exhibit J-06.)  The probation officer was authorized to approve medical, surgical, dental, or other remedial care by a licensed practitioner as appears necessary.  (Id.)

On August 20, 1996, after Petitioner's father was arrested for spousal abuse, Petitioner's mother filed an order to show cause and temporary restraining order and an application for a restraining order.  (Order to Show Cause and Temporary Restraining Order, Exhibit J-11; Application and Declaration for Order, Exhibit J-10.)  In the applications, Petitioner's mother sought custody of Brenda Romo, Alfredo Romo, Daisy Romo, and Omar Romo.  (Exhibit J-11 at 2; Exhibit J-10 at 2.)  The petition did not seek legal custody of Petitioner, stating that he was incarcerated and would not be released prior to his eighteenth birthday.[2]  (Id. at 3-4.)

On September 9, 1996, Petitioner's mother became a naturalized citizen.  (Certificate of Naturalization, Exhibit J-12.)  On September 12, 1996, Petitioner's mother received a restraining order against Petitioner's father which gave her sole legal custody of Brenda Romo, Daisy Romo, Alfredo Romo, and Omar Romo.  (Restraining Order After Hearing 4, Exhibit J-13.)  Petitioner is not mentioned in the order.  On October 9, 1996, Petitioner's father was ordered deported to Mexico.  (Order of the Immigration Judge 4, Exhibit J-14.)

On October 5, 2004, Petitioner was deported to Mexico.  (Application for Certificate of Citizenship 3, Exhibit J-20; Record of Deportable/Inadmissible Alien 2, Exhibit J-24.)  On

---

[2] Since the Court finds that Petitioner's mother did not have legal custody of him by virtue of the juvenile court order removing him from her custody and control, it declines to address Petitioner's argument that the State is estopped from arguing that she did not have legal custody based on him not being included in the custody order.

4

March 19, 2008, Petitioner's parents were divorced. (Exhibit J-17.) On August 26, 2010, an indictment was filed finding Petitioner to be a deported alien found in the United States in violation of 8 U.S.C. §§ 1326(a) and (b)(2). (Indictment, Exhibit J-19.) On April 11, 2011, Petitioner applied for a certificate of citizenship. (Exhibit J-20.) On May 10, 2011, the government moved to dismiss the indictment without prejudice. (Exhibit J-21.) The indictment was dismissed on May 11, 2011.[3] U.S.A v. Romo-Jimenez, No. 2:10-cf-00365-JAM-1 (E.D. Cal.) at ECF No. 22.

### B. Actual Uncontested Custody

While Petitioner seeks derivative citizenship based upon his mother's naturalization, Respondent contends that Petitioner cannot show that his mother had sole uncontested custody of him as he was removed from the custody of his parents by the August 29, 1995 order of the court and placed under the care of his probation officer. It is undisputed that there is no judicial determination or statutory grant of custody to Petitioner's mother; and it is also undisputed that during this entire time period, Petitioner was incarcerated in the California Youth Authority. Initially, the Court considers whether Petitioner's mother had "actual uncontested custody" when he was incarcerated in the California Youth Authority. Minasyan, 401 F.3d at 1076 n.12.

In Matter of M-, 3 I. & N. Dec. 850 (BIA 1950), the Board of Immigration Appeals ("BIA") considered a matter in which the parents were separated, but no judicial determination or judicial or statutory grant of custody had been entered under the prior statutory scheme. Bagot v. Ashcroft, 398 F.3d 252, 259 (3d Cir. 2005). The parents had received an annulment and the father moved to the United States, while the child remained with her mother. Id. at 850-51. After the father was naturalized, the child came to the United States to live with her father. Id. at 851. There was no judicial decree of custody, but the child's mother agreed to give custody to the father. Id. The BIA found "that, in the absence of judicial determination or judicial or statutory grant of custody in the case of legal separation of the parent of a person claiming citizenship . . . the parent having actual uncontested custody is to be regarded as having

---

[3] The Court takes judicial notice of court records of the indictment against Petitioner. **Error! Main Document Only.**Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007).

'legal custody' of the person."[4] Id. at 856.

The decision in Matter of M- has been the law that courts continue to apply where there is no judicial or statutory grant of custody. Garcia v. USICE (Dep't of Homeland Sec.), 669 F.3d 91, 96 (2d Cir. 2011); see also Bagot, 398 F.3d at 266-67 (considering whether parent had actual uncontested custody where no one had legal custody of petitioner under state law). Two predominant indicators of 'actual uncontested custody" are (i) the child's physical residence, and (ii) consent to custody by the non-custodial parent." Dep't of Homeland Sec, 669 F.3d at 97.

Petitioner argues that his mother did have uncontested custody of him. However, there is no dispute that she did not have actual custody of Petitioner. From the time that his mother was naturalized until his twenty-first birthday, Petitioner was not physically residing with his mother as he had been removed from his parents' custody by court order and was incarcerated in the California Youth Authority. See Wedderburn v. I.N.S., 215 F.3d 795, 797 (7th Cir. 2000) (petitioner's paternal grandmother had physical custody of him at time of his father's naturalization so BIA decision that one parent's permanent physical custody with the other parent's consent is "legal custody" does not assist petitioner). During the entire time period at issue here, Plaintiff was in the actual custody of the California Youth Authority and for that reason his mother did not have "actual uncontested custody" of him.[5] Because Petitioner's mother did not have actual custody of him because of his incarceration, this Court finds that she did not have legal custody of him within the meaning of Matter of M-.

### C. Legal Custody

Petitioner argues that his mother maintained legal custody of him despite his incarceration in the California Youth Authority.

In addressing the issue of domestic relations between husband and wife and parent and

---

[4] The Circuits are split on whether the BIA's interpretation is entitled to Chevron deference. Bustamonte-Barrera v. Gonzales, 447 F.3d 388, 393 (5th Cir. 2006). The Ninth Circuit has held that the BIA is not entitled to Chevron deference ""the INA explicitly places the determination of nationality claims solely in the hands of the courts of appeals and (if there are questions of fact to resolve) the district courts[.]" Minasyan, 401 F.3d at 1074. However, the Supreme Court recently stated that Chevron deference applies when the BIA interprets immigration laws. Scialabba, v. Cuellar de Osorio, 573 U.S. ___, No. 12-930 (9th Cir. June 9, 2014).

[5] The Court declines to accept the legal fiction that Petitioner was in his mother's actual custody because his legal address was considered his mother's physical address as requested by Petitioner.

child, the Supreme Court has held that the whole subject belongs to the laws of the States and not federal law. Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 12 (2004). Where the term in question involves a legal relationship that is created by state law, the Ninth Circuit has held that we must begin our analysis by looking to state law. Minasyan, 401 F.3d at 1077. In Minasyan, the Ninth Circuit cited Fierro v. Reno, 217 F.3d 1, 4 (1st Cir. 2000) and Wedderburn, 215 F.3d at 799, which both recognized that we take the meaning of words in a federal statute from federal law, but look to state law to understand the terms. Minasyan, at 1077. Since Petitioner resided in California, the Court looks to California law to determine if Petitioner's mother had legal custody of Petitioner during the relevant time period. Id.

Under California law, legal custody is "the right and the responsibility to make the decisions relating to the health, education, and welfare of a child." Cal. Fam. Code §§ 3303, 3306. A parent may have joint or sole legal custody of the child. Cal. Fam. Code §§ 3303, 3306. In this instance, Respondent has conceded that Petitioner's father did not have custody of Petitioner during the relevant time period, but argues that his mother did not have legal custody of him while he was incarcerated in the California Youth Authority. Petitioner contends that the fact that he was incarcerated in the California Youth Authority does not affect his mother's legal custody because the court did not appoint another responsible adult to make decisions for him.

Petitioner relies on California Welfare and Institutions Code section 726(b), which states:

> Whenever the court specifically limits the right of the parent or guardian to make educational or developmental services decisions for the minor, the court shall at the same time appoint a responsible adult to make educational or developmental services decisions for the child. . . ."

While Petitioner contends that the court did not appoint anyone to make decisions for him, the August 29, 1995 order clearly removed him from the custody of his parents and placed him in the supervision of his probation officer. Pursuant to the August 29, 1995 order of the Juvenile Court, Petitioner was "removed from the custody and control of parent, and placed . . . in suitable out of home placement." (Joint Exhibit 06.) Petitioner's probation officer was to "authorize such medical, surgical, dental or other remedial care by a licensed practitioner as from time to time appears necessary." (Id.)

1       Although Petitioner argues that his mother retained legal custody of him after the court
2  ordered him removed from his parents' custody and control, the Court finds this is not consistent
3  with California law.  Initially, Petitioner contends that the Dispositional Study shows that
4  Petitioner's mother retained legal custody of him.  (Joint Exhibit 4, p. 1.)  However, this
5  document addressed Petitioner's status prior to the August 29, 1995 hearing in which the Court
6  removed him from the custody of his parents.

7       Further, although Petitioner argues that the Court order did not remove legal custody
8  from his parents, he cites In re B.G., 11 Cal.3d 679 (1974), which addresses dependency removal
9  under the Welfare and Institutions Code and not delinquency removal.  Therefore, In re B. G. is
10 not helpful in this instance.

11      In re Nathan W, 205 Cal.App.3d 1496 (1988), considered the custody of a minor
12 adjudged a ward of the court pursuant to section 600.  The minor argued that he was adjudged a
13 ward of the court and removed from his parents' custody without the required finding that
14 remaining in the custody of his parents would be detrimental to him.  Id. at 1499.  The California
15 statutory scheme of placement for minors "ranges from the least restrictive, in the home of his
16 parents, to the extreme commitment to the Youth Authority."  Id.  The court explained that the
17 court does not take physical custody from the parents when the minor is left in their custody after
18 being declared a ward of the court.  Id. at 1500.  "The custody awarded by the juvenile court to
19 the [probation department] is the minor's legal custody.  Thus, there is no need for a court finding
20 of detriment, much less that the minor's welfare requires his 'custody' be taken from his parent
21 or guardian."  Id.

22      Similarly, in In re Grimmer, 259 Cal.App.2d 840 (1968), the appellate court addressed
23 the legal significance of an order taking custody and control from the mothers of minors who
24 were divorced and had been awarded custody of the minor.  Id. at 842.  The minors were
25 adjudged a ward of the court under section 602 and were placed in the home of the parent under
26 the supervision of the probation officer.  Id.  The adjustment of the minor was then found to be
27 unsatisfactory and they were removed from their mother's custody and placed in the custody of
28 the probation officer for placement in a foster home.  Id.  Both of the mothers moved to another

1  county after remarrying and the juvenile proceedings were transferred to the new county of
2  residence. Id. The appellate court was considering which county should retain the proceedings
3  because transfer is authorized when the "residence" of the juvenile is changed to another county.
4  Id.

5  The appellate court found that the order placing the minors in the custody of the
6  probation officer for foster home placement legally deprived the mothers of custody. Id. at 842-
7  43. The court stated that the order "would be but a futile gesture if it did not have that effect. Id.
8  at 843. While the respondent argued that the orders only deprived the parent of physical custody,
9  the court said the orders removed custody. The court considered that the "breadth and
10 importance of removal from 'physical custody' is emphasized by section 726 and 777, fixing
11 standards for such removal." Id. "The code permits commitment of the minor "to the care,
12 custody and control of ... (c) The probation officer, to be ... placed in some suitable family home
13 or suitable private institution" (§§ 727, subd. (c), 730, 731)." Id. The order was not so limited as
14 to only effect physical custody, and "must be construed broadly as removing all essential 'care,
15 custody, and control' from the mothers." Id.

16 Here, Petitioner was removed from his mother's custody and control by the August 29,
17 1995 court order. Under California law, she no longer had legal custody of Petitioner while he
18 was incarcerated in the California Youth Authority. In re Nathan W, 205 Cal.App.3d at 1500; In
19 re Grimmer, 259 Cal.App.2d at 843. Petitioner remained in the custody of the California Youth
20 Authority until the day prior to his twenty-first birthday. For these reasons, the Court finds that
21 Petitioner's mother did not have legal custody of him under California law while he was
22 incarcerated in the California Youth Authority.

23 **D.     Statutory Intent**

24 Finally, Petitioner argues that the statutory intent of Section 1432(a) only considers legal
25 custody as between the parents and requests that the Court rule that Petitioner has derived
26 citizenship through his mother. While Petitioner argues that his mother did not have to have
27 actual custody of him to be entitled to derivative citizenship, the issue before this court is not
28 whether he is entitled to derivative citizenship. Respondent has conceded that his father did not

have joint custody of Petitioner. This case was remanded for the Court to determine Petitioner's legal custody during the time that he was incarcerated in the California Youth Authority and whether he is entitled to derivative citizenship is not the issue before this Court.

## IV.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing IT IS HEREBY RECOMMENDED that the Court find that Petitioner was not in the legal custody of his mother while he was incarcerated in the California Youth Authority.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **June 17, 2014**

UNITED STATES MAGISTRATE JUDGE